**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YOHANN FETET, SAID HAOUAL,<br><br>                              Plaintiffs,<br><br>-against-<br><br>ALTICE USA, INC. and UNIVERSAL CABLE HOLDINGS, INC.,<br><br>                              Defendants. | No. 21-cv-01512 (DLC) |
| YOHANN FETET, SAID HAOUAL,<br><br>                              Plaintiffs,<br><br>-against-<br><br>ALTICE USA, INC., UNIVERSAL CABLE HOLDINGS, INC., and CSC HOLDINGS LLC<br><br>                              Defendants. | No. 21-cv-01532 (DLC) |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**ALTICE USA, INC., UNIVERSAL CABLE HOLDINGS, INC., AND CSC HOLDINGS**
**LLC'S PARTIAL MOTION TO DISMISS THE COMPLAINT OF**
**PLAINTIFFS YOHANN FETET AND SAID HAOUAL**

---

Lloyd B. Chinn
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Tel. (212) 969-3000
Fax. (212) 969-2900
E-mail: lchinn@proskauer.com
*Attorneys for Defendants Altice USA, Inc.*
*and Universal Cable Holdings, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ....................................................................................................3

    A.    The Wage Action ..................................................................................3

    B.    The ATS Action ...................................................................................4

STANDARD OF REVIEW .......................................................................................5

ARGUMENT ........................................................................................................6

    I.    Plaintiffs Fail to State a Claim for Unlawful Withholding of Wages (Wage Action)..................................................................................6

        A.    The Incentive Plan Bonus is Not a "Wage" Under New York Labor Law. .................................................................................7

            1.    Formulaic Bonuses Based on Company Success are not "Wages" Under NYLL. ..................................................7

            2.    Plaintiffs' Incentive Plan Bonus Had Not Vested at the Time of Their Terminations For Cause .........................9

            3.    Defendants Retained Discretion Over the Amount (if any) of the Incentive Plan Bonus. ...............................11

            4.    Incentive Compensation is not a "Wage" when Employees also Receive a Salary. .............................11

        B.    Severance Payments are Not "Wages" in the Case of Bona Fide Executives. ............................................................12

        C.    Alleged Withholding of Compensation is not a "Deduction" Under New York Labor Law. ..................................13

    II.    Plaintiffs Fail to State a Claim for Breach of Contract as to the Incentive Plan Bonus (Wage Action). .......................................14

    III.    Plaintiffs Fail to State a Claim for Unjust Enrichment (Wage Action). ............16

    IV.    Plaintiffs Fail to State a Claim For Breach of Contract (ATS Action)..............17

    V.    Plaintiffs Fail to State a Claim for Fraud (ATS Action)....................................20

        A.    Plaintiffs Fail To Satisfy Rule 9(b)'s Fraud Pleading Standard. ............20

B.      Plaintiffs Have Not Alleged That Defendants Had Any Fraudulent Intent .................................................................................. 22

VI.    Plaintiffs Fail to State a Claim for Promissory Estoppel (ATS Action). ............ 24

VII.   Plaintiffs Fail to State a Claim for Unjust Enrichment (ATS Action). ............... 25

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adler v. Solar Power, Inc.*,
No. 16-cv-1635-LTS, 2018 WL 1626162 (S.D.N.Y. Mar. 18, 2018) ..............................10, 16

*Am. Lecithin Co. v. Rebmann*,
No. 12-CV-929 (VSB), 2017 WL 4402535 (S.D.N.Y. Sept. 30, 2017) .................................21

*Arrouet v. Brown Brothers Harriman & Co.*,
No. 02-cv-9061 (TPG), 2005 WL 646111 (S.D.N.Y. Mar. 18, 2005)....................................15

*Battery Steamship Corp. v. Refineria Panama, S.A.*,
513 F.2d 735 (2d Cir. 1975)...................................................................................................18

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
448 F.3d 573 (2d Cir. 2006)...................................................................................................24

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004)...................................................................................................25

*Broadvision Inc. v. Gen. Elec. Co.*,
No. 08 Civ. 1478 (WHP), 2009 WL 2603145 (S.D.N.Y. Aug. 13, 2009).............................24

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....................................................................................................5

*Choquette v. Motor Info. Sys., Inc.*,
No. 15-cv-9338 (VEC), 2017 WL 3309730 (S.D.N.Y. Aug. 2, 2017)...................................23

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
70 N.Y.2d 382 (1987) ............................................................................................................24

*Cohen v. Avanade, Inc.*,
874 F. Supp. 2d 315 (S.D.N.Y. 2012)....................................................................................21

*Cohen v. Koenig*,
25 F.3d 1168 (2d Cir. 1994)...................................................................................................23

*Connaughton v. Chipotle Mexican Grill, Inc.*,
135 A.D.3d 535 (1st Dep't 2016) ...........................................................................................22

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991)......................................................................................................5

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011) ..................................................................23

*Ferrand v. Credit Lyonnais*,
    No. 02 Civ. 5191 (VM), 2003 WL 22251313 (S.D.N.Y. Sept. 30, 2003), *aff'd*,
    110 F. App'x 160 (2d Cir. 2004) ........................................................................16

*Fischkoff v. Iovance Biotherapeutics, Inc.*,
    No. 17CIV5041ATGWG, 2018 WL 4574890, at *4 (S.D.N.Y. July 5, 2018)........................8

*Fraiberg v. 4Kids Ent., Inc.*,
    75 A.D.3d 580 (2d Dep't 2010) ..........................................................................12

*Gold v. Am. Med. Alert Corp.*,
    No. 14 CIV 5485 JFK, 2015 WL 4887525 (S.D.N.Y. Aug. 13, 2015) ................................14

*Gorey v. Allion Healthcare Inc.*,
    18 Misc. 3d 1118(A), 2008 WL 183721 (Sup. Ct. Suffolk Cnty. Jan. 7, 2008).....................15

*Guiry v. Goldman, Sachs & Co.*,
    31 A.D.3d 70 (1st Dep't. 2006) ........................................................................7, 9

*Henneberry v. Sumitomo Corp. of Am.*,
    532 F. Supp. 2d 523 (S.D.N.Y. 2007)....................................................................23

*Hudson & Broad, Inc. v. J.C. Penney Corp.*,
    No. 12-cv-3239 (KBF), 2013 WL 3203742 (S.D.N.Y. June 18, 2013), *aff'd*,
    553 F. App'x 37 (2d Cir. 2014) ........................................................................16

*Hunter v. Deutsche Bank AG*,
    56 A.D.3d 274 (1st Dep't 2008) ........................................................................11

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*,
    921 F. Supp. 2d 56 (S.D.N.Y. 2013 .......................................................................6

*Int'l Bus. Machs. Corp. v. Martson*,
    37 F. Supp. 2d 613 (S.D.N.Y. 1999)....................................................................11

*JA Apparel Corp. v. Abboud*,
    568 F.3d 390 (2d Cir. 2009)........................................................................18, 19

*Jensen v. AR Glob. Invs., LLC*,
    No. 19-CV-657 (RA), 2020 WL 1322584 (S.D.N.Y. Mar. 20, 2020)...................................13

*Kaplan v. Cap. Co. of Am. LLC*,
    298 A.D.2d 110 (1st Dep't 2002) ........................................................................16

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)...................................................................................24

*King v. Falco*,
    No. 16-cv-6315 (VB), 2018 WL 6510809 (S.D.N.Y. Dec. 11, 2018).......................................3

*Levion v. Societe Generale*,
    822 F. Supp. 2d 390 (S.D.N.Y. 2011), *aff'd*, 503 F. App'x 62 (2d Cir. 2012)...................9, 11

*Monagle v. Scholastic, Inc.*,
    No. 06 Civ. 14342 (GEL), 2007 WL 766282 (S.D.N.Y. Mar. 9, 2007)......................12, 13, 14

*Moras v Marco Polo Network, Inc.*,
    No. 11 Civ. 2081 (PAE), 2012 WL 6700231 (S.D.N.Y. Dec. 20, 2012) ..........................13, 14

*Murray v. Xerox Corp.*,
    811 F.2d 118 (2d Cir. 1987)...................................................................................23

*O'Grady v. BlueCrest Cap. Mgmt. LLP*,
    111 F. Supp. 3d 494 (S.D.N.Y. 2015), *aff'd,* 646 F. App'x 2 (2d Cir. 2016).........................15

*Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*,
    497 F. Supp. 2d 541, 549 (S.D.N.Y. 2007)..........................................................5, 17

*Perella Weinberg Partners LLC v. Kramer*,
    153 A.D.3d 443 (1st Dep't 2017) ...........................................................................13

*Randolph Equities, LLC v. Carbon Cap., Inc.*,
    No. 05 CIV 10889 PAC, 2007 WL 914234 (S.D.N.Y. Mar. 26, 2007)................................21

*Saleemi v. Pencom Sys. Inc.*,
    No. 99 CIV. 667 (DLC), 2000 WL 640647 (S.D.N.Y. May 17, 2000), *aff'd*,
    242 F.3d 367 (2d Cir. 2000) (Cote, J.)...........................................................22, 23

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)................................................................................6, 22

*Starter Corp. v. Converse, Inc.*,
    170 F.3d 286 (2d Cir. 1999)...................................................................................20

*Tischmann v. ITT/Sheraton Corp.*
    882 F. Supp. 1358 (S.D.N.Y. 1995)............................................................................7

*Truelove v. Northeast Capital*,
    95 N.Y.2d 220, 224 (Ct. App. N.Y. 2000)................................................................7, 11

*United States ex rel. Ladas v. Exelis, Inc.*,
    824 F.3d 16 (2d Cir. 2016)...................................................................................20

*W.B. David & Co., Inc. v. DWA Commc'ns, Inc.*,
    No. 02 Civ. 8479(BSJ), 2004 WL 369147 (S.D.N.Y. Feb. 26, 2004)....................................24

*Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.*,
    111 F. Supp. 2d 450 (S.D.N.Y. 2000)..............................................................................18, 19

*Wojchowski v. Daines*,
    498 F.3d 99 (2d Cir. 2007)...............................................................................................5

*Wolff v. Rare Medium, Inc.*,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002), *aff'd* 65 F. App'x 736 (2d Cir. 2003).........................17

## STATUTES

N.Y. Lab. Law § 190(1)...................................................................................................12

N.Y. Lab. Law §§ 190 *et. seq.* ......................................................................................13

N.Y. Lab. Law § 193 ............................................................................................. passim

N.Y. Lab. Law § 198-c ...................................................................................................12

N.Y. Lab. Law § 198-c(2)...............................................................................................12

N.Y. Lab. Law § 198-c(3)...............................................................................................12

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ............................................................................................. passim

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 3, 5

## PRELIMINARY STATEMENT

After running the operating division for which they had responsibility to the point of

failure and treating it as their personal piggy bank – thus resulting in their terminations for cause

– Plaintiffs Yohann Fetet and Said Haoual (collectively, "Plaintiffs") now bring this meritless

action seeking tens of millions in allegedly unpaid compensation and other damages.[1]  Many of

Plaintiffs' claims, however, fail on the face of their complaint and should be dismissed pursuant

to Federal Rule of Civil Procedure 12(b)(6).

In the Wage Action, Plaintiffs point to two distinct payments allegedly owed: formulaic

incentive compensation allegedly due under a bonus plan ("Incentive Plan Bonus") and

severance compensation.  (In response to Defendants' prior partial motion to dismiss, now

mooted, Plaintiffs dropped any claim arising from the alleged nonpayment of a "salary bonus" as

well as any "Account Stated" claim.)  Contrary to Plaintiffs' claims – and based solely on their

own allegations and the documents they reference – neither their Incentive Plan Bonus nor any

severance can be deemed "wages" under the New York Labor Law ("NYLL") as a matter of law.

The reasons for their failure vary – the Incentive Plan Bonus fails because it is calculated based

on the financial performance of an entire business unit, it was ultimately a discretionary

payment, and it has not vested.  Severance, based on a plain reading of the NYLL, cannot

---

[1] On February 19, 2021, Defendants Altice USA, Inc. and Universal Cable Holdings, Inc. removed Plaintiffs' complaint against them to this Court (Case No. 21-cv-01512).  Later that same day, Plaintiffs filed a separate complaint against those Defendants, and added CSC Holdings, LLC as a third defendant (Case No. 21-cv-01532).  This Court then consolidated those cases and ordered Plaintiffs to file an Amended Consolidated Complaint, which they did on March 30, 2021 (ECF No. 19 in the first action, ECF No. 15 in the second action).  For purposes of this memorandum, Defendants will refer to the docket in the first action (Case No. 21-cv-01512).  Plaintiffs' Amended Consolidated Complaint also divides their claims into a so-called "Wage Action," which reflects most of their claims from the first action, and an "ATS Action," which reflects their claims from the second action.  For ease of reference, Defendants will adopt Plaintiffs' nomenclature.

constitute a wage for executives such as Fetet and Haoual.  And none of the claims arise – as a matter of law – from any alleged "withholding" of wages under the NYLL, thus foreclosing any claim for liquidated damages or attorney's fees.  Indeed, each of Plaintiff's NYLL wage claims are asserted in direct contradiction of well-settled New York jurisprudence in this area.  In addition to Plaintiffs' failure to state a claim under the NYLL, Plaintiffs fail to state a claim in *any* of their Causes of Action with respect to the Incentive Plan Bonus, over which Defendants retained sole discretion with respect to their payment.  As detailed further below, such discretionary bonuses cannot be the basis for a breach of contract claim or unjust enrichment claim.

In the ATS Action, Plaintiffs vaguely assert the existence of an alleged promise for an equity interest in an Altice USA, Inc. ("Altice") operating division.  Though Plaintiffs assert numerous theories of recovery in the ATS Action, all fail as a matter of law.  Plaintiffs' breach of contract claim fails because, despite the fact that Plaintiffs were party to a number of written agreements (including the above-mentioned Incentive Plan) with Altice, none reflects the promise they now claim.  Plaintiffs' attempted assertion of a fraud claim likewise fails, first by virtue of Fed. R. Civ. P. 9(b)'s heightened pleading requirement, and second, because Plaintiffs have not alleged any fraudulent intent at the time of the alleged promise.  And finally, their claims for promissory estoppel and unjust enrichment ultimately both fail because of, among other things, the simple fact that a party cannot recover damages on a quasi-contract theory when a written contract exists, as it does here.

For those reasons, and others stated more fully herein, Defendants Altice, Universal Cable Holdings, Inc. ("Universal") and CSC Holdings LLC ("CSC") (collectively,

"Defendants"),[2] respectfully request that this Court dismiss Plaintiffs' First, Fifth, Sixth,

Seventh, Ninth, and Tenth Causes of Action in their entirety, and dismiss Plaintiffs' Fourth

Cause of Action as to Plaintiffs' claim to the "Incentive Plan Bonus."[3]

## BACKGROUND

### A.    The Wage Action

Until their terminations for cause, Plaintiffs were the Chief Executive Officer (Fetet) and

General Manager (Haoual) of Altice Technical Services ("ATS"), an operating division of

Defendants Altice USA, Inc. ("Altice") and CSC Holdings, LLC.  Amended Consolidated

Complaint, ECF No. 19 in Case No. 01512, at ¶¶ 12-13 (hereafter, "Compl.").  On or about

March 15, 2018 Plaintiffs entered into an Employee Bonus Incentive Plan and Confirmation of

Employment (the "Incentive Bonus Plan"), *Id.* ¶ 50, later amended on September 17, 2018 as the

Amended and Restated Employee Bonus Incentive Plan (the "Amended Incentive Bonus Plan").

*Id.* ¶ 18.[4]  Altice compensated each Plaintiff with a base salary at an annual rate of $350,000 (as

to which there is no dispute regarding Altice's payment through the termination of Plaintiffs'

---

[2] It also bears noting that Plaintiffs have not pleaded any substantive allegations against Defendant Universal Cable Holdings, and only mention Defendant CSC Holdings LLC in passing, presenting an alternative basis for dismissal as to those Defendants.  *See King v. Falco*, No. 16-cv-6315 (VB), 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018) (dismissing claims against defendant where defendant's name was included "in the case caption but [plaintiff] fails to make any substantive allegations against her in the body of the complaint").  Moreover, neither of those two Defendants are parties to Plaintiffs' Incentive Bonus Plan.  They should be dismissed from this action on that basis alone.

[3] Plaintiffs' remaining claims, although not subject to a Rule 12 motion, are equally meritless.  Without waiving any defenses, Plaintiffs' breach of contract/unjust enrichment claims as they relate to a claim for severance fail because Plaintiffs were terminated "for cause," as defined in the relevant agreements, after Defendants uncovered their gross misconduct.  Plaintiffs' retaliation claim also fails because Defendants decided to terminate Plaintiffs for lawful reasons (*i.e.*, their blatant misconduct) and did so prior to Plaintiffs' engaging in any allegedly protected activity.

[4] As noted in the Amended Incentive Bonus Plan itself, it amended and restated an earlier "Employee Bonus Incentive Plan and Confirmation of Employment" between Plaintiffs and Altice, dated March 15, 2018.  The compensation structure as it relates to the "incentive plan" was identical under both plans, *i.e.*, the terms quoted in Paragraph 19 of the Complaint are the same in the September 2018 Plan as they are in the March 2018 Plan.

employment).  In addition, under the Amended Incentive Bonus Plan, each Plaintiff also was eligible to receive two forms of annual incentive compensation, a salary bonus and an "Incentive Plan Bonus" based on ATS' overall financial performance.  *Id.*  By its own terms, the Incentive Plan Bonus for calendar year 2020 had not yet vested at the time of Plaintiffs' terminations for cause in early December 2020, much less when Plaintiffs submitted their bonus calculations in September 2020.  Declaration of Lloyd B. Chinn ("Chinn Decl."), Ex. A at § 4.2.  Moreover, the total amount of the Incentive Plan Bonus, if any, however, was ultimately in Altice's sole discretion, as Altice's Chairman was empowered to be the final arbiter of dispute over the Bonus.  Chinn Decl., Ex. A at § 4.2.4.  Finally, in the event Plaintiffs were terminated *without* cause – a determination to be made at Altice's sole discretion – they were eligible to receive severance pay calculated based on six months' of base salary.  *Id.* ¶ 37.

### B.    The ATS Action

Prior to a corporate restructuring in 2018, Plaintiffs were equity holders in a European subsidiary of Altice called ATS BV.  Compl. ¶¶ 48-49.  In or around February 2018, Defendants purchased Plaintiffs' thirty percent stake in ATS BV.  *Id.* ¶ 50.  In exchange, Plaintiffs thereafter became parties to the Incentive Bonus Plan.  *Id.*  Plaintiffs allege that, at the time of this well-documented transaction, Defendants also made a "promise and agreement to give Plaintiffs another thirty (30%) interest in a future re-structuring and spin-off of their branch business[.]" *Id.*  Despite having entered into various written contracts with Altice in early 2018, however, Plaintiffs have not identified any written instrument supporting an alleged future thirty percent ownership interest.

Plaintiffs and Altice later entered into an Amended Incentive Bonus Plan, *Id.* ¶ 52, and then a Cancellation and Release Agreement ("Settlement Agreement").  *Id.* ¶¶ 24-25.  Neither subsequent agreement included any promise by Altice to provide Plaintiffs with a future equity

stake.  Instead, under the Settlement Agreement, Altice and Plaintiffs agreed that Altice would

pay "millions" to Plaintiffs ($2.4 million each) in Incentive Bonus Plan compensation.  *Id.*, *see*

Chinn Decl., at Ex. C at § 1.  The Plaintiffs and Altice also agreed that the Amended Incentive

Bonus Plan would terminate, "effective on the earlier of (i) December 31, 2019, or (ii) the date

the parties put in place a new bonus or ownership incentive plan, provided that after December

31, 2019, the current Bonus Plan shall continue, month to month thereafter until a substitute

bonus or ownership plan is put in place."  Chinn Decl, Ex. C at § 2.  The Settlement Agreement

provided further that, "The Parties will negotiate in good faith a mutually agreeable substitute

bonus or ownership incentive plan."  *Id.*  Notably, the Settlement Agreement also contained an

integration clause.  *See id*. at § 14.  Although not contractually required, and in contemplation of

a new business structure, ATS US, LLC was later formed in September 2020.  Compl. ¶ 57.  The

ATS US, LLC entity never housed any assets, liabilities, equipment, or any other thing of value

during Plaintiffs' employment with Altice, *Id.* ¶ 78, or thereafter.  Defendants also returned to

Plaintiffs their initial ATS US, LLC capital contribution of $30,000 each.  *Id.* ¶ 79.

Altice terminated Plaintiffs for cause on December 8, 2020.  *Id.* ¶ 34.

## STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is appropriate where, "even if all of the allegations

contained in a complaint are true, a claim fails as a matter of law."  *Wojchowski v. Daines*, 498

F.3d 99, 106 (2d Cir. 2007).

Where a plaintiff cites a document in a complaint, the court may consider the portion

cited and the rest of the document on a motion to dismiss.  *See Chambers v. Time Warner, Inc.*,

282 F.3d 147, 152-53 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48

(2d Cir. 1991); *Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 549

(S.D.N.Y. 2007).  Alternatively, courts may consider documents on Rule 12 motions when they

are "integral" to the Complaint.  *See In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 921 F. Supp. 2d 56, 70 (S.D.N.Y. 2013).  Under these standards, the Court can and should consider the Incentive Bonus Plan (Chinn Decl. Ex. B), the Amended Incentive Bonus Plan (Chinn Decl. Ex. A), and the Settlement Agreement (Chinn Decl. Ex. C).  The Incentive Bonus Plan and Amended Incentive Bonus Plan are discussed and quoted throughout Plaintiffs' Complaint.  Compl. ¶¶ 18-20, 22, 25, 27, 50, 52, 53, & 61.  The Settlement Agreement is referred to in the Complaint; it is also integral to the Complaint both because Plaintiffs rely upon its terms and because it modified the Amended Incentive Bonus Plan.  *Id.* ¶¶ 24-25, 53.

Finally, under Fed. R. Civ. P. 9(b), "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  (emphasis added).  The Second Circuit has stated that "to serve the purposes of Rule 9(b), we require plaintiffs to allege facts that give rise to a strong inference of fraudulent intent.  The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (affirming grant of motion to dismiss).

## ARGUMENT

### I.  Plaintiffs Fail to State a Claim for Unlawful Withholding of Wages (Wage Action).

As to each of the forms of payment allegedly owed to Plaintiffs in the Wage Action, their attempt to plead a claim under the NYLL fails as a matter of law for the following reasons:

*Incentive Plan Bonus*

- As this is compensation based on the overall financial success of ATS, the Altice operating division managed by Plaintiffs, it is not a "wage" under the NYLL,

- At the time of Plaintiffs' terminations for cause, no 2020 Incentive Plan Bonus had vested,
- The Incentive Plan Bonus was discretionary and therefore not a "wage" under the NYLL, and
- Plaintiffs also received a salary, negating any inference that their incentive compensation was a "wage."

*Severance Pay*

- This form of compensation is expressly excluded from the statutory definition of wages for the bona fide executives, like Plaintiffs.

Finally, Plaintiffs' Complaint also contains a reference to unlawful deductions under § 193 of the NYLL.  Compl., ¶¶ 32 & 86.  To the extent Plaintiffs assert an unlawful deductions claim, it too, should be dismissed, as an alleged wholesale withholding of compensation does not constitute a deduction within the meaning of the statute.  Moreover, Plaintiffs' demands for "legal fees, liquidated damages, statutory penalties, together with the costs and disbursements in this action" must also be denied as Plaintiffs have failed to state a claim under this section of the NYLL, and thus are not entitled to any of the statutory penalties.

### A.     The Incentive Plan Bonus is Not a "Wage" Under New York Labor Law.

     *1.     Formulaic Bonuses Based on Company Success are not "Wages" Under NYLL.*

It is well-settled that formulaic bonuses do not constitute a "wage" for purposes of the NYLL if the bonus calculation under the formula depends on the company's "overall financial success," as opposed to an employee's "personal productivity" or "individual performance." *Guiry v. Goldman, Sachs & Co.*, 31 A.D.3d 70, 73 (1st Dep't. 2006) (affirming grant of motion to dismiss); *Tischmann v. ITT/Sheraton Corp.* 882 F. Supp. 1358 (S.D.N.Y. 1995). In *Truelove v. Northeast Capital & Advsiory, Inc.*, the Court of Appeals of New York affirmed the dismissal of plaintiff's NYLL claims where the incentive compensation at issue was "both contingent and dependent, at least in part, on the financial success of the business enterprise."  95 N.Y.2d 220,

224 (2000).  Likewise, in *Fischkoff v. Iovance Biotherapeutics, Inc.*, No. 17 Civ. 5041 (AT)
(GWG), 2018 WL 4574890, at *4 (S.D.N.Y. July 5, 2018), the court held that "[t]he consensus
[in the Second Circuit] is that bonuses conditioned on individual performance constitute wages
under the NYLL, while bonuses conditioned on group or company-wide performance do not."

      Nowhere in their Complaint do Plaintiffs claim that any potential Incentive Plan Bonus
was predicated in any way on their respective personal productivity – and nor could they, given
that the Amended Incentive Bonus Plan itself does not provide that the Incentive Plan Bonus was
to be paid based on the personal performance of either Plaintiff, whether in whole or in part.
Indeed, the Incentive Plan Bonus could not be based on the personal productivity of either
Plaintiff, as the specified calculation is intended to arrive at a potential Incentive Plan Bonus for
both of the Plaintiffs combined.

      Instead, as described by Plaintiffs in their Complaint, any Incentive Plan Bonus for which
they were eligible was linked directly to the overall financial success of ATS, measured by
EBITDA Margin and Net Profit.  Compl., ¶ 19; Chinn Decl., Ex. A at § 4.1.  Section 1.4 of the
Incentive Plan defines EBITDA as "net income (loss) as calculated pursuant to the Management
Reporting Principles, excluding income tax expense/income, interest expense/income,
depreciation and amortization (including impairments)."  Chinn Decl., Ex. A at § 1.4.  Any
resultant bonus was based on EBITDA Margin and Net Profit.  *Id.* at § 4.1.  EBITDA Margin is
defined as "EBITDA divided by Revenues."  *Id.* at § 1.5.  The term "Revenues" is defined as
"revenues generated by ATS from the Company for any applicable period, determined in
accordance with Management Reporting Principles."  *Id.* at § 1.3.  Net Profit is defined as
"EBITDA less provision for income taxes at a rate of 27%."  *Id.* at § 1.6.

As delineated in paragraph 19 of the Complaint, Plaintiffs' potential bonus compensation thus varied depending on EBITDA Margin and Net Profit.  As EBITDA margin increased, Plaintiffs were eligible for a higher percentage of the Net Profit as a bonus.  Compl. ¶ 19.  Thus, any Incentive Plan Bonus compensation awardable to Plaintiffs was indisputably derived from the "overall financial success" of ATS.  *See Guiry* 31 A.D.3d at 73.

The Amended Incentive Bonus Plan at issue here is similar to that at issue in *Levion v. Societe Generale*, where the operative agreement provided that plaintiff would share in a bonus pool "based on certain percentages of [his group]'s net profit and loss."  822 F. Supp. 2d 390, 393 (S.D.N.Y. 2011), *aff'd*, 503 F. App'x 62 (2d Cir. 2012).  Plaintiff received bonuses based on that agreement for a number of years before resigning after the company reduced his bonus one year.  *Id.* at 395.  Plaintiff brought suit under N.Y. Lab. Law § 193.  The court held that because plaintiff's "bonus payments were dependent on the success of the entire [group]," his NYLL claims failed as a matter of law because "his compensation does not constitute 'wages' within the meaning of the statute."  *Id.* at 404.

In this case, like in *Levion*, Plaintiffs' bonuses were inextricably linked to ATS's financial performance – not their own personal performances.  Indeed, the ATS EBITDA Margin had to exceed a certain threshold (5%) for Plaintiffs even to be eligible to receive an Incentive Plan bonus at all.  *See* Chinn Decl., Ex. A at § 4.  As explained previously, the Bonus, including the amount thereof, if any amount at all, was *solely* based on EBITDA Margin and Net Profit, and accordingly, the Plaintiffs' Incentive Plan Bonus wage claim fails as a matter of law.

   2.   *Plaintiffs' Incentive Plan Bonus Had Not Vested at the Time of Their Terminations For Cause*

Though the plain facts and law detailed above dispose of this claim entirely, it bears noting that Plaintiffs' Incentive Plan Bonus had not even *vested* by the time of their terminations

for cause.  *See Adler v. Solar Power, Inc.*, No. 16-cv-1635-LTS, 2018 WL 1626162, at *11 (S.D.N.Y. Mar. 18, 2018) (holding unvested bonus was not a wage under the NYLL).  Section 4.2 of the Amended Incentive Bonus Plan provides that "Management shall prepare and provide, as soon as reasonably practical **after** the close of the applicable Calendar Year … a statement prepared in good faith … setting forth Management's determination of the EBITDA and the Bonus calculation for the Calendar Year."  Chinn Decl., Ex. A at § 4.2.1 (emphasis added).  This dispute, by Plaintiffs' own admission, involves Plaintiffs' calculation of their Incentive Plan Bonus from January 2020 through September 2020.  Compl. ¶ 27.  As Plaintiffs submitted their calculations early, the Incentive Plan Bonus had not yet vested – and could not vest until at least the end of calendar year 2020.  Further, Altice had an opportunity to dispute such calculation – and did so in this instance.  Plaintiffs and Altice were then directed to attempt to resolve dispute over the calculations, but in the event they could not, the Chairman of the Board of Directors of Altice was the final decision maker, empowered to resolve "statement[s] of disagreement" between Plaintiffs and Altice.  Chinn Decl., Ex. A at §§ 4.2.4, 4.2.4.2.[5]

Accordingly, under the plain language of the Amended Incentive Bonus Plan, any Incentive Plan Bonus *could not have* vested unless and until the dispute over any potential bonus was resolved.  Correspondence from Plaintiffs' counsel referenced in the Complaint makes it clear that Altice, in fact, disputed Plaintiffs' entitlement to any Incentive Plan Bonus for 2020.  Chinn Decl., Ex. D.  As such, there can be no claim that any 2020 Incentive Plan Bonus vested – nothing was vested, much less earned.

---

[5] For example, if the Plaintiffs calculated EBITDA Margin for a Calendar Year at 13.5% (thus leading to an Incentive Plan Bonus of 20% of the Net Profit, under Section 4.1.3) and Altice disagreed and calculated the EBITDA Margin at 0.2% (thus leading to no bonus under Section 4.1.1), the Chairman was solely empowered to resolve the disagreement, necessarily including a resolution in favor of Altice (and, in turn, no payment to Plaintiffs of any Incentive Plan Bonus for the year).

3.    _Defendants Retained Discretion Over the Amount (if any) of the Incentive Plan Bonus._

As explained above, any Incentive Plan Bonus payable to Plaintiffs was ultimately subject to a non-reviewable denial by Altice, and thus, not a "wage" under the NYLL.  The Chairman of the Board of Directors of Altice had sole discretion to resolve disputes over the amount of the Incentive Plan Bonus paid to Plaintiffs, and thus, the bonus amount was in the Chairman's sole discretion.  Chinn Decl., Ex. A at § 4.2.4.  New York law is clear that such discretionary compensation is not a "wage" under the NYLL.  *See Truelove*, 95 N.Y.2d at 224 ("plaintiff's share in the bonus pool was entirely discretionary and subject to the non-reviewable determination of his employer.  These factors, we believe, take plaintiff's bonus payments out of the statutory definition of wages").  Accordingly, because no potential Amended Incentive Bonus Plan payments are "wages" under the NYLL, there can be no violation for "unlawful withholding of wages under New York Labor Law."  Plaintiffs' First Cause of Action, inasmuch as it relates to the Amended Incentive Bonus Plan, must be dismissed.

4.    _Incentive Compensation is not a "Wage" when Employees also Receive a Salary._

Finally, if an employee receives a salary, then any incentive compensation is not typically viewed as a "wage."  *Int'l Bus. Machs. Corp. v. Martson*, 37 F. Supp. 2d 613, 618 (S.D.N.Y. 1999) ("Receipt of a fixed salary generally negates any inference that a separate incentive payment . . . constitutes wages"); *see also Levion*, 822 F. Supp. 2d at 403 (noting that it is "settled that [t]he term 'wages'…does not encompass an incentive compensation plan") (internal citations omitted); *Hunter v. Deutsche Bank AG*, 56 A.D.3d 274, 274 (1st Dep't 2008) ("Unpaid bonuses do not constitute 'wages' under Labor Law § 193").  Therefore, even if Plaintiffs' bonus compensation had not been so clearly dependent on ATS' financial success, this claim nonetheless fails as a matter of law because Plaintiffs received a substantial annual salary of

11

$350,000 each, s*ee* Chinn Decl., Ex. A at §§ 6.1.1.1 & 6.1.1.2, and thus, their incentive compensation in addition to their salary is not a "wage" under the NYLL.

### B.       Severance Payments are Not "Wages" in the Case of Bona Fide Executives.

Plaintiffs' claim for unlawful withholding of severance payments, also alleged in their First Cause of Action, fails as a matter of law because severance pay is not a "wage" under NYLL, at least in the case of bona fide executives.  N.Y. Lab. Law § 198-c.  Under Section 190 of the NYLL, the term "wages" is defined to include "benefits or wage supplements as defined in section [198-c]."  N.Y. Lab. Law § 190(1). Under Section 198-c, "benefits or wage supplements" includes separation pay.  N.Y. Lab. Law § 198-c(2).  Section 198-c also states, however, that it does "not apply to any person in a bona fide executive … capacity whose earnings are in excess of nine hundred dollars a week."  N.Y. Lab. Law § 198-c(3).  As set forth in their Complaint, Plaintiff Fetet was the Chief Executive Officer of ATS, while Plaintiff Haoual served as the ATS General Manager.  Compl., ¶¶ 12-13.  As set forth in the Amended Incentive Bonus Plan, they were responsible for "managing, advising and directing ATS in . . . management and operational related functions."  Chinn Decl., Ex. A at § 2.1.  They each earned a salary of $350,000.00 annually.  *Id.* at §§ 6.1.1.1 & 6.1.1.2.  Therefore, because they are not covered under Section 198-c, the severance payments were not wages under the NYLL.

New York courts routinely hold that severance pay is excluded from the statutory definition of wages for bona fide executives who make more than $900 per week.  *See, e.g.*, *Fraiberg v. 4Kids Ent., Inc.*, 75 A.D.3d 580, 583 (2d Dep't 2010) ("plaintiff acknowledged that she worked in a bona fide executive, administrative, or professional capacity and earned in excess of $900 per week.  Hence … she could not assert a claim thereunder to compel the payment of her severance package") (internal citations and quotations omitted); *Monagle v. Scholastic, Inc.*, No. 06 Civ. 14342 (GEL), 2007 WL 766282, at *2 (S.D.N.Y. Mar. 9, 2007)

(granting motion to dismiss) ("the Labor Law provision that directly protects severance payments excludes certain employees … explicitly provid[ing] that it shall not apply to any person in a bona fide executive … capacity[.]") (internal quotations and citations omitted).

Accordingly, because these severance payments are not "wages" under the NYLL with respect to these Plaintiffs, there can be no NYLL violation for "unlawful withholding of wages under New York Labor Law."  Plaintiffs' First Cause of Action, inasmuch as it relates to severance payments, must be dismissed.

**C.    Alleged Withholding of Compensation is not a "Deduction" Under New York Labor Law.**

Although Plaintiffs' First Cause of Action is stylized as "Unlawful withholding of wages under New York Labor Law," Paragraph 86 states, "Defendants have unlawfully made deductions from Plaintiffs' wages in violation of NYLL §§ 190 et seq."  To the extent Plaintiffs assert a claim under N.Y. Lab. Law § 193 ("Deductions from wages"), it too fails, because New York courts routinely hold that wholesale alleged withholding of compensation is not a "deduction" within the meaning of the statute.  *See, e.g.*, *Perella Weinberg Partners LLC v. Kramer*, 153 A.D.3d 443, 449 (1st Dep't 2017) ("Labor Law claims were correctly dismissed because a wholesale withholding of a payment is not a 'deduction' within the meaning of Labor Law § 193"); *see also Jensen v. AR Glob. Invs., LLC*, No. 19-CV-657 (RA), 2020 WL 1322584, at *6 (S.D.N.Y. Mar. 20, 2020) (granting motion to dismiss) ("It is well established that a wholesale withholding of payment, however, is not a 'deduction' within the meaning of Labor Law § 193.  To the contrary, a 'deduction' is more targeted and direct than the wholesale withholding of wages … the purpose of [S]ection 193 is to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee.") (internal quotations and citations omitted); *Moras v Marco Polo Network, Inc.*, No. 11 Civ. 2081 (PAE),

13

2012 WL 6700231, at *11 (S.D.N.Y. Dec. 20, 2012) (same); *Monagle*, 2007 WL 766282, at *2 (same).

The thrust of Plaintiffs' complaint is that they were not paid certain sums to which they were entitled.  At no point, aside from two threadbare (and inaccurate) references, do they plead that any payments were *deducted* from their wages.  Rather, they claim that Defendants "failed to pay the 2020 Bonus[,]" and that Plaintiffs "were not paid the six-month severance[.]"  Compl. ¶¶ 31, 37.  As Plaintiffs themselves admit, Defendants did not deduct these allegedly owed payments; rather, Defendants did not pay them.

Given that Plaintiffs fail to plead that any payments were deducted from their wages, they fail to state a claim for unlawful deductions under the NYLL, and any such claim, if pled at all, should be dismissed.  Therefore, Plaintiffs' demands for "legal fees, liquidated damages, statutory penalties, together with the costs and disbursements in this action" should be denied, as Plaintiffs have failed to state a claim under this section of the NYLL, and thus are not entitled to any of the statutory penalties.  *See, e.g.*, *Gold v. Am. Med. Alert Corp.*, No. 14 CIV. 5485 JFK, 2015 WL 4887525, at *2 (S.D.N.Y. Aug. 13, 2015) ("It is settled that section 198 does not permit recovery … on a common-law contractual remuneration claim as the recovery of attorney's fees and liquidated damages is limited to actions for wage claims founded on the substantive provisions of Labor Law article 6. Thus, [plaintiff] is only entitled to section 198's double recovery if he can show that [defendant] violated section 193, the only Article 6 claim he makes.") (internal quotations and citations omitted).

## II.  Plaintiffs Fail to State a Claim for Breach of Contract as to the Incentive Plan Bonus (Wage Action).

Plaintiffs' Fourth Cause of Action fails as a matter of law, with respect to the Incentive Plan Bonus, for largely the same reasons that Plaintiffs cannot recover those amounts under the

NYLL because: (1) Altice retained discretion over the amount of the Incentive Plan Bonus (if any) and (2) it had not vested and conditions precedent to payment had not been satisfied.

*First*, when an employer, by contract, retains discretion over a payment, it does not breach that contract if it decides to exercise its discretion and decline to make such payment. *O'Grady v. BlueCrest Cap. Mgmt. LLP*, 111 F. Supp. 3d 494, 501 (S.D.N.Y. 2015), *aff'd*, 646 F. App'x 2 (2d Cir. 2016) (granting motion to dismiss) ("It is well established that an employee cannot recover for an employer's failure to pay a bonus under a plan that provides the employer with absolute discretion in deciding whether to pay the bonus") (internal quotations and citations omitted). The contract at issue in *O'Grady*, for example, provided that payments pursuant to bonus plans would be made in the company's sole discretion. *Id.* at 502. Accordingly, the court held, the plaintiff's "breach of contract claim as related to his bonus payment is barred by the plain terms of the Agreement." *Id.* at 503. The court granted defendant's motion to dismiss for failure to state a claim, and the Second Circuit affirmed the dismissal. *Id.* at 506.

As noted previously, the Incentive Plan Bonus was entirely discretionary. Chinn Decl., Ex. A at §§ 4.2.4 (entitling the Chairman of Altice to resolve disputes as to the Incentive Plan Bonus). Defendants could not "breach" the Amended Incentive Bonus Plan by virtue of exercising the discretion afforded to them by that agreement. And as noted, New York courts consistently have held the same. *See, e.g.*, *Arrouet v. Brown Brothers Harriman & Co.*, No. 02-cv-9061 (TPG), 2005 WL 646111, at *4 (S.D.N.Y. Mar. 18, 2005) ("An employee cannot establish that an employer breached a contract to pay a particular amount of bonus compensation where the employer retains discretion regarding the amount of bonus compensation"); *Gorey v. Allion Healthcare Inc.*, 18 Misc. 3d 1118(A), 2008 WL 183721, at *8 (Sup. Ct. Suffolk Cnty. Jan. 7, 2008) (same).

15

*Second*, when contractual conditions precedent for a potential bonus award are not satisfied, no obligation to pay arises under the agreement.  *Adler*, 2018 WL 1626162, at *6.  As discussed at length above, *supra* Section I.A.2, no Incentive Plan Bonus could be owed until the end of the calendar year and until resolution of any dispute by Altice's Chairman.  Because neither condition precedent to payment was met here, this claim fails as a matter of law.

## III.  Plaintiffs Fail to State a Claim for Unjust Enrichment (Wage Action).

Asserted as an alternative argument in the event the Court finds that no valid contract exists, Plaintiffs' unjust enrichment claim, with respect to the Incentive Plan Bonus, nonetheless must be dismissed, again, because it was discretionary in nature.  With respect to unjust enrichment claims, as with breach of contract and NYLL claims, New York courts hold that plaintiffs cannot recover discretionary bonuses.  *See Ferrand v. Credit Lyonnais*, No. 02 Civ. 5191 (VM), 2003 WL 22251313, at *14 (S.D.N.Y. Sept. 30, 2003) (rejecting plaintiff's *quantum meruit* claim for unpaid discretionary bonus compensation), *aff'd*, 110 F. App'x 160 (2d Cir. 2004); *Kaplan v. Cap. Co. of Am. LLC*, 298 A.D.2d 110, 111 (1st Dep't 2002) (same).

To establish a *quantum meruit*/unjust enrichment claim, Plaintiffs must prove (i) the performance of services in good faith, (ii) acceptance of the services by the person to whom they are rendered, (iii) an expectation of compensation therefor, and (iv) the reasonable value of the services."  *Hudson & Broad, Inc. v. J.C. Penney Corp.*, No. 12-cv-3239 (KBF), 2013 WL 3203742, at *6 (S.D.N.Y. June 18, 2013), *aff'd*, 553 F. App'x 37 (2d Cir. 2014).  However, a mere alleged expectation of compensation by Plaintiffs is not sufficient to meet their burden.  They must show a "reasonable expectancy of receiving such compensation." *Id*.  Because of the discretionary nature of the bonus, Plaintiffs cannot have reasonably expected receiving any bonuses where a prevailing contingency exists, and their claim fails as a matter of law.

Plaintiffs have also failed to state a claim for unjust enrichment as to severance, largely for the reasons discussed *infra* in Sections VI and VII: that this claim is governed by contract, and thus Plaintiffs cannot recover under a quasi-contract theory.

**IV.    Plaintiffs Fail to State a Claim For Breach of Contract (ATS Action).**

Plaintiffs' ATS Action contract claim fails because, first and foremost, because they cannot identify any contract that has been allegedly breached. *See Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 554 (S.D.N.Y. 2007) (granting motion to dismiss breach of contract claim where counterclaimant "fail[ed] to allege the specific provision of the Agreement … allegedly breached – an essential requirement for a breach of contract claim"); *see also Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) (same), *aff'd* 65 F. App'x 736 (2d Cir. 2003).

Although Plaintiffs vaguely refer to an alleged "promise and agreement to give Plaintiffs another thirty (30%) interest in a future re-structuring and spin-off of their branch business" (Compl. ¶ 50), they do not even identify the legal entity responsible for having made such a promise (other than to refer generically to "Defendants") or whether that alleged promise was in any way reduced to writing. Indeed, while Plaintiffs and Defendants have entered into various written agreements, not the least of which being their Incentive Bonus Plan, none of them include any promise a future thirty percent equity stake in anything.

The Complaint's lack of reference to any writing that purportedly promises them a future thirty percent interest in exchange for their interest in ATS BV is revealing. As acknowledged by Plaintiffs, there is an "Employee Bonus Incentive Plan; Confirmation of Employment" dated March 15, 2018 – a written agreement entered into between Plaintiffs and Altice USA, Inc. Chinn Decl. Ex. B. This plan, as noted, was later amended and restated (*Id.* Ex. A), and eventually continued month-to-month pursuant to the Settlement Agreement, *Id.* Ex. C.

On a motion to dismiss, a court is permitted to determine whether a contract is integrated as a matter of law. *Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.*, 111 F. Supp. 2d 450, 454 (S.D.N.Y. 2000) (granting motion to dismiss breach of contract claim). "[U]nder New York law a contract which appears complete on its face is an integrated agreement as a matter of law". *Id.* (*quoting Battery Steamship Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 738 n.3 (2d Cir. 1975). If a document appears complete on its face, "appears to contain the engagements of the parties, and to define the object and measure the extent of such engagement, then it constitutes the contract between them, and is presumed to contain the whole of that contract." *Wayland*, 111 F. Supp. 3d at 454 (internal quotations and citations omitted). If, however, a party points toward an agreement outside the four corners of such a contract, and the contract lacks a merger clause, the question becomes whether or not the contract is integrated by reading in in light of the surrounding circumstances, and by "determining whether or not the [other] agreement was one which the parties would ordinarily be expected to embody in the writing." *Id.* (citations omitted).

Next, if there is no ambiguity in a contract, "its meaning is [] a question of law for the court to decide." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009). Moreover, if there is no ambiguity, "the court is not to consider any extrinsic evidence as to the parties' intentions[.]" *Id.* As is applicable here, extrinsic or parol evidence is precluded when used to *create* an ambiguity where none exists. *Wayland*, 11 F. Supp. 2d at 455.

Neither the Incentive Bonus Plan nor the Amended Incentive Bonus Plan contain any ambiguity as to any future equity stake. Rather, they are straightforward agreements by which Plaintiffs serve as employees in specified capacities in exchange for guaranteed base salaries and potential discretionary compensation. Both contain not even a hint of a future exchange involving an equity stake. Both are complete on their faces and integrated, and accordingly, the

court may not consider any extrinsic evidence nor parol evidence.  *See JA Apparel Corp.*, 568 F.3d at 397; *Wayland*, 11 F. Supp. 2d at 455.  Rather, analysis must be limited to applying the terms within the four corners of the subject documents.

The subsequent Settlement Agreement (Chinn Decl., Ex. C), entered into between the parties in October 2019 to resolve a dispute under the Amended Incentive Bonus Plan, also confirms that there was never any contract requiring Altice USA, Inc. to provide Plaintiffs an equity stake in a future entity.  While the Settlement Agreement refers to a future ownership stake as one potential future option, it makes it clear that Plaintiffs could also simply continue on as employees under either the existing bonus plan (on a month-to-month basis) or a new substitute bonus plan.  Specifically, it states that the Amended Incentive Bonus Plan, "shall continue, month to month thereafter until a substitute bonus **or** ownership incentive plan is put in place."  Put simply, Defendant Altice did not in any way commit itself to providing Plaintiffs with an ownership stake in any Altice entity. [6]

Finally, the Settlement Agreement contains an integration clause at paragraph fourteen, which states that:

> This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and cancels and supersedes all of the previous or contemporaneous contracts, representations, warranties and understandings (whether oral or written) by the parties hereto with respect to the subject matter hereof.

Chinn Decl., Ex. C at ¶ 14.  Even if there had been an oral promise in early 2018 relating to a future ownership interest – not otherwise deemed inadmissible parol evidence as to a fully

---

[6] Plaintiffs hint that because they eventually became 30% equity holders in ATS US, LLC, that alone somehow establishes that there had been a contractual obligation or agreement requiring as much.  But as explained above, the parties had plainly contemplated that future ownership was a mere possibility and not contractually required.

integrated agreement – the Settlement Agreement's integration clause disposed of it.  When a contract contains an express integration clause, extrinsic evidence of a separate oral agreement may not be considered.  *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 295 (2d Cir. 1999). Plaintiffs cannot point to any written agreement obligating Altice (much less Universal or CSC) to provide them with an ownership interest in ATS.  The fully integrated agreements governing the relationship between Altice and Plaintiffs contain no such promise, and the Settlement Agreement expressly disavows any.  Plaintiffs' breach of contract claim must be dismissed.

**V.      Plaintiffs Fail to State a Claim for Fraud (ATS Action).**

     **A.      Plaintiffs Fail To Satisfy Rule 9(b)'s Fraud Pleading Standard.**

To satisfy Rule 9(b)'s heightened pleading standard in fraud cases, complaints must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016).

There is only one paragraph in which Plaintiffs discuss the making of an alleged promise for a thirty percent equity interest – the alleged promise that induced them to relinquish their interest in ATS BV – and the assertions contained therein do not remotely satisfy Rule 9(b).[7] Specifically, Paragraph 50 of the Complaint states as follows:

> In connection with the above re-structuring, in or around February 2018, Defendants approached Plaintiffs, and offered that they surrender their combined thirty (30%) percent stake in ATS BV,

_____

[7] While Plaintiffs elsewhere attempt to provide factual information about other aspects of their claims, none of these other paragraphs relate to the allegedly fraudulent transaction whereby Plaintiffs relinquished their equity in ATS BV, allegedly in exchange for a promise of a future ownership interest. For example, under the heading "Fraud," in Paragraph 137, Plaintiffs cite statements allegedly made by Altice Chairman Patrick Drahi and shareholder Armando Pereira.  Compl. ¶ 137.  However, in Paragraph 46, Plaintiffs make it clear that those statements were about their earlier receipt of an equity interest in ATS BV.  As admitted by Plaintiffs, they received those interests (¶ 48), and later relinquished them in exchange for the Incentive Bonus Plan.  Compl. ¶ 51.

> worth approximately $20 Million Dollars in exchange for a token
> Thirty Thousand (30,000.00) Euro for the shares, a temporary bonus
> plan and, more significantly, promise and agreement to give
> Plaintiffs another thirty (30%) percent interest in a future re-
> structuring and spin-off of their branch business, which would later
> be formed by Altice USA and known as Defendant ATS US, LLC.

Compl. ¶ 50.  Plaintiffs do not: (i) specify any statement they contend was fraudulent, (ii)

identify any speakers, or (iii) state where the statements were made.  This claim should thus be

dismissed for these reasons alone.  *See Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 324

(S.D.N.Y. 2012) (granting motion to dismiss fraudulent inducement claim where plaintiff

identified alleged speakers, but only gave a "general description of the statements that he

contends were fraudulent and fails altogether to identify 'where and when the statements were

made'") (citation omitted).

       In addition, Plaintiffs do not allege any facts that would indicate that alleged statements

were fraudulent when made, other than the general allegation that the "promise" was never

fulfilled, which for reasons discussed above, is insufficient to plead fraud.  *See Am. Lecithin Co.

v. Rebmann*, No. 12-CV-929 (VSB), 2017 WL 4402535, at *20 (S.D.N.Y. Sept. 30, 2017)

(granting motion to dismiss fraud claim where "allegations fail to plead knowledge or intent to

defraud with Rule 9(b) particularity").  In *Rebmann* the defendants/counter-plaintiffs (alleging

fraud in a counterclaim) made only "purely conclusory" statements about the allegedly

fraudulent speaker's knowledge, *e.g.*, that the individual "knew each statement was false when

made" or that his "intent all along was to take Defendant's shares in the business."  *Id.*  Here, as

discussed further below, Plaintiffs' Complaint similarly states in an entirely conclusory fashion

(Compl. ¶ 136) that the statements were made with knowledge of their falsity, and just as in

*Rebmann*, Plaintiffs' claim must be dismissed.  S*ee also Randolph Equities, LLC v. Carbon

Cap., Inc.*, No. 05 CIV 10889 PAC, 2007 WL 914234, at *7 (S.D.N.Y. Mar. 26, 2007)

("[Plaintiff's] conclusory allegations, and allegations based on 'information and belief' that Defendants did not intend to honor the contract are insufficient" under Rule 9(b)).

Finally, as is discussed more fully below, Plaintiffs also do not plead anything that would even arguably constitute "strong circumstantial evidence" that Altice had no intent to perform at the time it made the alleged promise. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("The requisite 'strong inference' of fraud [required by Rule 9(b)] may be established … by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness").[8]

## B.   Plaintiffs Have Not Alleged That Defendants Had Any Fraudulent Intent

Apart from Plaintiffs' failure to satisfy Rule 9(b), they have also failed to assert any facts to support certain key elements of a fraud claim. Plaintiffs' fraud claim fails because they have not alleged (and cannot show) that at the time the allegedly fraudulent statement was made, Defendants had no intention to perform. To state a legally cognizable claim of fraudulent inducement under New York law, Plaintiffs must prove: (1) a misrepresentation of a then-present fact; (2) which was untrue; (3) the fact was material; (4) the fact was known to be untrue; (5) the fact was offered to deceive another or to induce him to act; (6) the injured party did not know the statement was false; (7) reasonable reliance of the other party on the misrepresentation; (8) which that other party relied on; and (9) caused injury. *See Connaughton v. Chipotle Mexican Grill, Inc.*, 135 A.D.3d 535, 537 (1st Dep't 2016).

---

[8] Plaintiffs attempt to muddy the waters in this regard, alleging for example that Defendants delayed the transfer of assets into ATS prior to Plaintiffs' terminations. Allegations such as these miss the pleading standard entirely. As is discussed in more detail below, Plaintiffs must plead with specificity that there was fraudulent intent at the time the promise was allegedly made. *Saleemi v. Pencom Sys. Inc.*, No. 99 CIV. 667 (DLC), 2000 WL 640647, at *5 (S.D.N.Y. May 17, 2000), *aff'd*, 242 F.3d 367 (2d Cir. 2000) (Cote, J.) ("When a fraud claim is based on a promise to perform an act in the future, the plaintiff must show that there was no intent to fulfill the promise at the time it was made").

When the alleged fraud is based on a promissory statement, however, Plaintiffs have a very specific hurdle to clear, "[t]he failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to perform at the time the promise was made." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (emphasis added).  Plaintiffs have not done so – they have not alleged, in anything but a non-conclusory fashion, that Altice made the alleged statements without any intent to perform at the time that they were made.  As a result, they have not asserted elements 1, 4 or 5 above, and their claims should be dismissed.

In this regard, the law is clear that a plaintiff must plead (and prove) that a speaker made statements with a "preconceived … intention of not performing," or with knowledge that the outcomes could not be achieved.  *Choquette v. Motor Info. Sys., Inc.*, No. 15-cv-9338 (VEC), 2017 WL 3309730, at *5 (S.D.N.Y. Aug. 2, 2017) (citations omitted) (granting defendant's motion for summary judgment of fraudulent inducement claim); *Saleemi*, 2000 WL 640647, at *5 (Cote, J.) ("When a fraud claim is based on a promise to perform an act in the future, the plaintiff must show that there was no intent to fulfill the promise at the time it was made").  Altice's non-fulfillment of this alleged promise is not evidence of its intent at the time the promise was made.  *Murray v. Xerox Corp.*, 811 F.2d 118, 122 (2d Cir. 1987) ("fraudulent intent is not demonstrated by evidence of mere non-performance of a promise").

Because Plaintiffs do not endeavor to allege in their Complaint any facts that would show that Defendants had no intent to perform the alleged promise when allegedly made, this claim fails as a matter of law.  *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 545 (S.D.N.Y. 2007). [9]

---

[9] Plaintiffs' fraud claim is also duplicative of their contract claim, and could be dismissed on that ground alone. *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 197 (S.D.N.Y. 2011) ("Under New York law, a cause of action sounding in fraud cannot be maintained when the only

**VI.    Plaintiffs Fail to State a Claim for Promissory Estoppel (ATS Action).**

To state a claim for promissory estoppel under New York law, a plaintiff must allege "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance."  *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).  As detailed above, Plaintiffs have not remotely pleaded that there was any "clear and unambiguous promise" of a future ownership interest.

More importantly, however, Plaintiffs cannot rely on quasi-contract theories of recovery, such as promissory estoppel, when there is a written contract governing the dispute at issue. *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. . . . A 'quasi contract' only applies in the absence of an express agreement"); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) ("It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties"); *Broadvision Inc. v. Gen. Elec. Co.*, No. 08 Civ. 1478 (WHP), 2009 WL 2603145, at *3 (S.D.N.Y. Aug. 13, 2009) ("[a] contract cannot be implied in fact where there is an express contract covering the subject matter involved").

Because there is a contract here expressly covering this subject matter, this claim must be dismissed.

---

fraud charged relates to a breach of contract"); *see also W.B. David & Co., Inc. v. DWA Commc'ns, Inc.,* No. 02 Civ. 8479(BSJ), 2004 WL 369147, at *3 (S.D.N.Y. Feb. 26, 2004) (noting that courts do not "recognize claims that are essentially contract claims masquerading as claims of fraud").

24

**VII.      Plaintiffs Fail to State a Claim for Unjust Enrichment (ATS Action).**

As with Plaintiffs' promissory estoppel claim, Plaintiffs' unjust enrichment claim in the ATS Action likewise fails because there exists a contract governing the subject matter.

Beyond that legal principle, "[t]he basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Even accepting Plaintiffs' allegations as true, Plaintiffs exchanged their shares in ATS BV for a sizeable annual salary and the potential to receive bonuses (and they received "millions" in that regard for 2018 alone) (Compl. ¶ 53). It can hardly be said that Defendants were enriched at Plaintiffs expense. Accordingly, even if there were not a contract governing the subject matter of this quasi-contract claim, it would nevertheless fail.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' First, Fifth, Sixth, Seventh, Ninth, and Tenth Causes of Action in their entirety, dismiss Plaintiffs' Fourth Cause of Action as to Plaintiffs' claim to the "Incentive Plan Bonus," and grant all other relief it deems just and proper.

Dated: April 23, 2021                          Respectfully Submitted,

                                                              PROSKAUER ROSE LLP

                                                     By: */s/ Lloyd B. Chinn*
                                                              Lloyd B. Chinn
                                                              Eleven Times Square
                                                              New York, New York 10036
                                                              (212) 969-3000
                                                              lchinn@proskauer.com