David C. Van Leeuwen
Francois Peyrot
Peyrot & Associates, PC
62 William Street, 8th Floor
New York, New York 10005
(Phone: 646-650-2785); (Fax: 646-650-5109)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

YOHANN FETET, SAID HAOUAL,                    **Case # 21-CV-01512**
                                               **Case # 21-CV-01532**


                    Plaintiffs,
         -against-

ALTICE USA, INC., UNIVERSAL CABLE
HOLDINGS, INC., CSC HOLDINGS, LLC,

                    Defendants.

---

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS


David C. Van Leeuwen, Esq. (DV 2007)
Francois Peyrot, Esq.
**PEYROT & ASSOCIATES, PC**
62 William Street, 8th Floor
New York, New York 10005
(646) 650-2785
David.vanleeuwen@peyrotlaw.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES – page 3

PRELIMINARY STATEMENT - page 7

ARGUMENT – page 11

I. Legal Standard – Motion to Dismiss – page 11

II. Plaintiffs State a Valid Cause of Action that their Unpaid Earned Bonuses are Wages under NY Labor Law (Wage Action) – page 12

III. Plaintiffs State a Claim for Breach of Contract (Wage Action) – page 16

IV. Plaintiffs are Permitted to Plead Unjust Enrichment in the Alternative (Wage Action)– page 18

V.  The Plaintiffs State a Claim for Breach of Contract (ATS Action) – page 18

VI.  The Plaintiffs State a Claim for Fraud (ATS Action) – page 21

VII.  The Plaintiffs State a Claim for Promissory Estoppel (ATS Action) – page 22

VIII.  The Plaintiffs are permitted to Plead Unjust Enrichment in the Alternative (ATS Action) – page 23

IX. Leave to Amend Pleadings Freely Granted – page 24

CONCLUSION – page 24

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Arbeeny v Kennedy Exec. Search, Inc.,* 71 AD3d 177, 182 [2010] – page 13

*Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 72 (2d Cir.1989) –

page 22

*Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) – page 11

*Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n.3 (1984)

– page 11

*Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F.Supp.2d 1, 4 (S.D.N.Y.2004) –

page 18, 23

*Bell Atlantic v. Twombly*, 550 U.S. 544, 563 n.8 (2007) – page 11

*Breed v. Ins. Co of North America*, 46 NY2d 351, 355 [1978] – page 16

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) –

page 11

*Capital Bus. Credit LLC v. Tailgate Clothing Co., Corp.*, 172 A.D.3d 655, 656 (1st

Dept 2019) – page 19

*Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-21 (1959) – page 19

*DeLeonardis v. Credit Agricole Indosuez*, 2000 WL 1718543 (S.D.N.Y. 2000) –

page 15

*Dwyer v. Regan*, 777 F.2d 825, 829 (2d Cir.1985) – page 11

*Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.,* 804 F.2d 787, 793 (2d

Cir.1986) – page 22

*Fantozzi v. Axsys Techs., Inc.*, No. 07–CV–2667, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008) – page 18, 23

*Flores v. Lower E. Side Serv. Ctr., Inc.,* 4 N.Y.3d 363, 369, 795 N.Y.S.2d 491, 828 N.E.2d 593 (2005) – page 19

*Foman v. Davis,* 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) – page 24

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) – page 12

*Furia v. Furia*, 116 A.D.2d 694, (2d Dep't 1986) – page 16

*Giuntoli v. Garvin Guybutler Corp.*, 726 F.Supp. 494, 508 (1989) – page 12, 14

*Greenfield v. Philles Records, Inc,* 98 NY2d 562, 569 (2002) – page 16

*Gruber v J.W.E. Silk, Inc.,* 52 AD3d 339, 340 [2008] – page 12

*Guiry v. Goldman, Sachs*, & Co, 31 A.D.3d 70 (1st Dept. 2006) – page 14

*Hallet v. Stuart Dean Co.*, 481 F.Supp. 3d 294 (S.D.N.Y. 2020) – page 15

*Hobart v. Schule*r, 55 N.Y.2d 1023, 1024 (1982) – page 19

Int'l  Bus. Machs. Corp. v. Martson, 37 F.Supp 2d 613 (S.D.N.Y. 1999) – page 15

*Jacobson v. Cooper*, 882 F.2d 717, 718 (2d Cir.1989) – page 11

*JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803 (2d Dep't 2010) – page 16

*Kaplan v Capital Co. of Am.*, 298 AD2d 110, 111 [2002], *lv denied* 99 NY2d 510 [2003] – page 13

*Laduzinski v. Alvarez & Marsal Taxand LLC*, 132 A.D.3d 164, 169 (1st Dept. 2015) – page 19

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006) – page 12, 21

*LibertyPointe Bank v. 75 E. 125th St., LLC*, 95 A.D.3d 706, 706 (1st Dept. 2012) – page 19

*Loreley Financing 3 v. Wells Fargo Securities*, 797 F.3d 160, 171 (2d. Cir. 2015) – page 12

*Matter of Wallace v. 600 Partners Co.*, 86 NY2d 543, 548 [1995] – page 16

*MBIA Ins. Corp. v. Royal Bank of Canada*, 28 Misc.3d 1225 (A) (Sup. Ct. Westchester Co. 2010) – page 22

*Mirchel v RMJ Sec. Corp.*, 205 AD2d 388, 389 (1994) – page 13

*Mun. Consultants & Publishers v. Town of Ramapo,* 47 N.Y.2d 144, 148–49, 417 N.Y.S.2d 218, 390 N.E.2d 1143 (1979) – page 18

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Clairmont*, 231 A.D.2d 239, 241 (1st Dep't 1997) – page 19

*P.A. Bergner & Co. v. Martinez,* 823 F.Supp. 151, 160 (S.D.N.Y.1993) – page 22

*Paxi, LLC v. Shiseido Americas Corp.* 636 F.Supp.2d 275 (SDNY 2019) – page 19

*Pross v. Katz*, 784 F.2d 455, 457 (2d Cir.1986) – page 11

*Reprosystem, B.V. v. SCM Corp.,* 727 F.2d 257, 264 (2d Cir.1984) – page 22

*Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13 (1972) – page 19

*Ryan v. Kellogg Partners Institutional Services*, 19 N.Y.3d 1 (2012) – page 12, 13

*Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974) – page 11

*Simon v. FrancInvest, S. A.*, 192 A.D.2d 565 (1st Dept. 2021) – page 23

*Stone v. Chung Pei Chemical Industry Co. Ltd.*, 790 F.2d 20, 22 (2d Cir.1986) – page 11

*Thayer v. Dial Indus. Sales, Inc.*, 85 F.Supp.2d 263 (2000), citing *P.A. Bergner & Co. v. Martinez,* 823 F.Supp. 151, 160 (S.D.N.Y.1993) – page 22

*Tischmann v. ITT/Sheraton Corp.* 882 F.Supp. 1358 (S.D.N.Y 1995) – page 15

*Truelove v. Northeast Capital & Advisory*, Inc. 95 N.Y. 2d 220 (2000) – page 15

*Walia v. Veritas Healthcare Sols., L.L.C.*, No. 13 Civ. 6935, 2015 WL 4743542, at *6 (S.D.N.Y. Aug. 11, 2015) – page 12, 21

### **Statutes**

Fed. R. Civ. P. 8(a)(2) – page 11

Fed. R. Civ. P. 9(b) – page 12

Fed. R. Civ. P. 15(a) – page 24

NY Labor Law § 190(1) – page 13

## PRELIMINARY STATEMENT

At all relevant times since their hiring in early 2017, Plaintiffs, Mr. Fetet and Mr. Haoual, were respectively serving as Chief Executive Officer and General Manager of Altice Technical Services, a core branch business of Defendant ALTICE USA, INC., a publicly traded company (NYSU: ATUS). During Plaintiffs' tenure, they developed from the ground-up and grew the branch business from $0.00 to over $500 million dollars in revenue and from 0 to over 3,100 workers, which they autonomously and effectively hired, managed and supervised during this period of rapid expansion and highly profitable growth (average yearly EBITDA Margin above $40 Million per year).

As the facts of the matter shall seamlessly demonstrate, Plaintiffs were left with no alternative but to commence these now consolidated actions, as a result of Defendants' dishonest attempts to deprive them of contracted compensation justly due and owing.

We note that in a last-minute attempt to improperly recast the narrative of this dispute away from the facts, Defendants are now claiming, for the first time, that Plaintiffs "[ran] the operating division for which they had the responsibility to the point of failure and treated the branch business as a "personal piggy bank". This false claim which is insulting to our clients is not only without evidence but also blatantly contrary to the facts and the actual performance and efficiency of Plaintiffs regarding their management of said operating division, Altice Technical Services, throughout the years.

The facts of the matter include the Defendants' contracts to incentivize and reward Plaintiffs, with the incentive structure of performance-based bonuses plus equity in the branch business. Upon information and belief, similar incentive structures exist in other branch businesses of the Altice Group throughout the world, such as Portugal, Israel, France and the Dominican Republic.

The facts also reflect the significant outperformance of Altice Technical Services, [regarding the fiber-rich hybrid-fiber coaxial ("HFC") broadband network and the fiber-to-the-home ("FTTH") network], operated and managed by Plaintiffs, mentioned in multiple recent publications, including the 2020 Altice USA, Inc., Annual Report on file with the SEC, and more recently, an April 29, 2021 article by Fierce Telecom quoting the CEO of Altice USA, Inc., Dexter Goei. *Exhibit D.*   These public statements and actual financial results of Defendants are starkly contrary to Defendants' allegation that Altice Technical Services had been run by Plaintiffs "to the point of failure".   Moreover, Defendants attempted narrative does not and simply could not explain (i) why the Defendants would go through the trouble of creating the promised "spin-off" entity (ATS US LLC) in early 2020, and (ii) as a matter of fact, two months prior to Plaintiffs' termination issue Plaintiffs their long-promised 30% Equity in said ATS US LLC.

On the other hand, the facts of this matter do fit within the Defendants unscrupulous "*bait and switch"* business model of willfully delaying promised, contracted and owed to compensation to Plaintiffs until they could be removed.   It should also be noted that Defendants' improper termination letter for cause cited only boilerplate "performance failures" and unspecific "improper conduct", and despite the rejection notice served by Plaintiffs on December 11, 2020,

referencing, among other things, the fact that there had never been any alleged performance failures or improper conduct, much less were they ever been subjected to any poor performance reviews, warnings, HR issues, nor any disciplinary incidents or actions, Defendants remained silent and would stop any communication with Plaintiff thereafter.

It took Defendants until April 23, 2021 in their second partial motion to dismiss, to manufacture the purported "cause" for termination.  In fact, and once again, the Plaintiffs were improperly terminated as an attempt by Defendants to deprive them of compensation justly due and most certainly as the facts shall evidence, as a reprisal for the Plaintiffs raising the issues and concerns regarding material internal accounting manipulation practices of Altice USA, Inc, a public company vis-a-vis its branch business.  In it in fact no surprise in this context that Plaintiff's unlawful termination came only a few days after Plaintiffs restated in writing to Defendants' CEO, Mr. Dexter Goei and Chairman, Mr. Patrick Drahi, their concerns about said accounting manipulation and other compliance issues.

Despite the fact that Plaintiffs have properly set forth valid causes of action as against Defendants, Defendants again move for partial dismissal, this time of the consolidated complaint.  More specifically, Defendants in the Wage Action, claim that Plaintiffs' earned bonus does not fit within the definition of wages pursuant to New York Labor Law and that it was discretionary and therefore no breach of contact claim exists.  Defendants now include a new argument, in that the somehow claim of an earned bonus was not "vested".

However, this bonus was earned and therefore is a "wage" as pursuant to the labor law and as it related directly to the personal efforts of the CEO and

General manager.  A valid breach of contract claim also exists, as the complaint properly alleges that the statement of disagreement was not served by Defendants at all in accordance with the bonus plan, much less timely, a fact which Defendants do not and cannot deny.  As such, the bonus was earned and the Defendants subsequent failure to pay also constitutes a breach of contract.

In any event whatsoever, the very nature of the bonus compensation at stake here is not discretionary and resulted from a non-equivocal written contract and a non-ambiguous incentive plan agreement with a strict valuation formula and a guaranteed right to compensation.

As to the ATS Action, Defendants' claim that the integration clause in the settlement agreement precludes the breach of contact claim is illogical and without merit, as the integration clause is, among other things, unspecific and boilerplate and does not preclude the claims.  Defendants have also properly pled the promissory estoppel and unjust enrichment claims as more completely set forth below and as supported by the true facts of this matter.

For the reasons set forth herein, the application should be denied in its entirety.

## ARGUMENT

**I. Legal Standard – Motion to Dismiss**

On a motion to dismiss, the Court must read the complaint generously, drawing all reasonable inferences in favor of the plaintiff. *Pross v. Katz*, 784 F.2d 455, 457 (2d Cir.1986); *Dwyer v. Regan*, 777 F.2d 825, 829 (2d Cir.1985). Plaintiff's well-pleaded allegations must be accepted by the Court as true. E.g. *Jacobson v. Cooper*, 882 F.2d 717, 718 (2d Cir.1989). A claim should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Stone v. Chung Pei Chemical Industry Co. Ltd.*, 790 F.2d 20, 22 (2d Cir.1986)

It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bell Atlantic v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the

pleading standard for 'all civil actions' . . .."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

As to Rule 9(b), "[t]he complaint must (1) detail the statements…that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements…were made, and (4) explain why the statements…are fraudulent." *Loreley Financing 3 v. Wells Fargo Securities*, 797 F.3d 160, 171 (2d. Cir. 2015) (internal quotation marks omitted). Second, the complaint must "allege facts that give rise to a strong inference of fraudulent intent." Id. (internal quotation marks omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006); *Walia v. Veritas Healthcare Sols., L.L.C.*, No. 13 Civ. 6935, 2015 WL 4743542, at *6 (S.D.N.Y. Aug. 11, 2015).


**II. Plaintiffs State a Valid Cause of Action that their Unpaid Earned Bonuses are Wages under NY Labor Law (Wage Action).**

"[B]onus payments, already due and vested ... fall within the definition of wages in § 190." *Ryan v. Kellogg Partners Institutional Services*, 19 N.Y.3d 1 (2012), citing *Giuntoli v. Garvin Guybutler Corp.*, 726 F.Supp. 494, 509 (S.D.N.Y.1989)( "[p]laintiff here does not assert unlawful deductions from wages, but instead contends that bonus payments, already due and vested, have not

been paid to her. Such past due bonuses fall within the definition of wages in §
190"); NY Labor Law § 190(1).

New York also has "a long-standing policy against forfeiture of earned
wages" (*Gruber v J.W.E. Silk, Inc.,* 52 AD3d 339, 340 [2008]), which may apply
to bonuses as well (*see Arbeeny v Kennedy Exec. Search, Inc.,* 71 AD3d 177,
182 [2010]).

Unless an employer "clearly indicate[s] that bonuses are discretionary"
(*Ryan v Kellogg Partners Inst. Servs.*, 79 AD3d 447, 448 [2010], *affd* 19 NY3d 1
[2012]; *see Kaplan v Capital Co. of Am.*, 298 AD2d 110, 111 [2002], *lv denied* 99
NY2d 510 [2003]), the issue "whether unpaid incentive compensation under a
defendant's bonus plan constitutes a discretionary bonus or earned wages not
subject to forfeiture is [one] of fact".   *Mirchel v RMJ Sec. Corp.*, 205 AD2d 388,
389 (1994).

The complaint alleges, in pertinent part, that in or around September
2020, Plaintiffs timely transmitted their determination of the EBITDA and Bonus
calculation of January 2020 through September 2020 to Defendant ALTICE USA,
INC (hereinafter "2020 Bonus").   *Exhibit A* ¶ 27.   Defendant ALTICE USA, INC.
accepted this determination and did not deliver a statement of disagreement to
our clients pursuant to Section 4.2.3 of the Agreement within the twenty-one (21)
day period set forth in the Agreement.   *Exhibit A* ¶ 29; *Exhibit B 4.2.3.*

When Defendant ALTICE USA, Inc. failed to deliver a statement of
disagreement in accordance with the bonus plan, the 2020 Bonus was <u>earned,
vested, and due and owing</u> on or about November 2, 2020.  This all occurred well
prior to their unlawful termination on December 8, 2020.  *Exhibit A* ¶ 30.

13

The failure to pay the <u>earned</u> bonus resulted in straight damages in the amount of Two Million Eight Hundred Fifty-One Thousand and Sixty-Three ($ 2,851,063.00 USD) Dollars.  *Exhibit A* ¶ 28.  By way of context, upon information and belief, the COO and CEO of Defendant ALTICE USA, Inc. received an average yearly equity compensation over the last four years of more than Nineteen Million ($19,000,000.00) Dollars per year and Seventy-Five Million ($75,000,000.00) Dollars per year, respectively.

Defendants argue that the bonus does not constitute a wage if it is tied to the success of the company, and not one's personal performance, but since the Plaintiffs are CEO and General Manager of the branch business, the personal performance of Plaintiffs, is the determinative factor and the intention of the agreement and warrants at least some discovery on the issue.

 Plaintiffs' position is also corroborated by the language of the Bonus Plan, as follows:

> "*2.1 Purpose.*
>
> *The COMPANY give MANAGEMENT the task of <u>managing, advising, and directing</u> ATS in the execution of its technical, network and field services activities and <u>all</u> management and operational related functions, as they may evolve and as more fully set forth herein and pursuant to MANAGEMENT's employment by COMPANY.*"  *See Exhibit* B (emphasis supplied)

The severance payments are also considered a wage pursuant to Labor Law § 190.  *Giuntoli v. Garvin Guybutler Corp.*, 726 F.Supp. 494, 508 (1989). As such, the severance payments are properly pled in the complaint.

Defendants cite a number of cases in their papers, but those cases do not involve an earned, vested bonus.  *Guiry v. Goldman, Sachs*, & Co, 31 A.D.3d 70

(1st Dept. 2006)(unvested, contingent equity), *Tischmann v. ITT/Sheraton Corp.* 882 F.Supp. 1358 (S.D.N.Y 1995)(not guaranteed bonus plan); *Truelove v. Northeast Capital & Advisory*, Inc. 95 N.Y. 2d 220 (2000) (contingent); Int'l  Bus. Machs. Corp. v. Martson, 37 F.Supp 2d 613 (S.D.N.Y. 1999)(case does not involve a bonus but stock-options with divesting clause) *DeLeonardis v. Credit Agricole Indosuez*, 2000 WL 1718543 (S.D.N.Y. 2000)(unused vacation pay); *Hallet v. Stuart Dean Co.*, 481 F.Supp. 3d 294 (S.D.N.Y. 2020) (terminated prior to 2019 bonus).

Defendants also argue that the bonus plan had not vested and in doing so, cite Section 4.2 of the Bonus Plan.  However, they completely ignore the language of the settlement agreement, which indicates that in section 2 that the bonus plan would continue "month to month" thereafter.  *Exhibit C* ¶ 2. Moreover, there is no language in the Bonus Plan that tied vesting to the year end.  Once Defendant ALTICE USA, Inc. failed to deliver a statement of disagreement in accordance with the bonus plan, the 2020 Bonus was <u>earned, vested, and due and owing</u> on or about November 2, 2020.

Concomitantly, Defendants state in their preliminary statement that the Defendant Universal Cable Holdings, Inc., should be dismissed from this action. However, this is not appropriate.  It is not disputed that, at least, Defendant Universal Cable Holdings was the payor for Altice USA, Inc. *Exhibit E.*  Plaintiffs submit that any dismissal of Defendant Universal Cable Holdings, Inc. is at best premature.

Thus, the partial motion to dismiss should be denied in this regard.

### III. The Plaintiffs State a Claim for Breach of Contact (Wage Action)

In New York, "[t]he elements of a cause of action for breach of contract are (1) formation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to perform, [and] (4) resulting damage. *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803 (2d Dep't 2010); *Furia v. Furia*, 116 A.D.2d 694, (2d Dep't 1986).

As stated above, "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc,* 98 NY2d 562, 569 (2002); see also, *Matter of Wallace v. 600 Partners Co.*, 86 NY2d 543, 548 (1995); *Breed v. Ins. Co of North America*, 46 NY2d 351, 355 (1978)

The Plaintiffs have properly pled the existence of a contract, which is not controverted. *Exhibit A*. Plaintiffs have properly preformed, and as set forth above, as Plaintiffs timely transmitted their determination of the EBITDA and Bonus calculation of January 2020 through September 2020 to Defendant ALTICE USA, INC (hereinafter "2020 Bonus"). *Exhibit A* ¶ 27. Defendant ALTICE USA, INC. accepted this determination and did not deliver a statement of disagreement to our clients pursuant to Section 4.2.3 of the Agreement within the twenty-one (21) day period set forth in the Agreement. *Exhibit A* ¶ 29; *Exhibit B.*

Although for motion to dismiss purposes, the pleaded facts in the complaint are deemed to be true, and if the Defendants had served a statement of disagreement, one would suspect that they would be waiving it before the court now.

As such, the failure to pay the <u>earned</u> bonus constitutes the breach of contract and resulted in damages in the amount of Two Million Eight Hundred Fifty-One Thousand and Sixty-Three ($ 2,851,063.00 USD) Dollars.  *Exhibit A* ¶ 27.

Defendants' argument that the bonus plan was discretionary is untrue. The Incentive Bonus plan has a straightforward compensation formula based on the financials and the performance of the company.  *Exhibit* B § 4.1.  The mere fact that the chairman of the board would be deciding unresolved issues pursuant to section 4.2.4.2 does not mean he had absolute discretion, as ultimately the financials would govern the amounts owed, and he could not simply ignore the financials and defraud Plaintiffs of their compensation owed.  *Exhibit* B § 4.2.4.2.

All of this of course, is a moot point, as no statement of disagreement was delivered in accordance with the bonus plan, much less a timely one.

As stated above, Defendants also argue that the bonus plan had not vested and in doing so, cite Section 4.2 of the Bonus Plan.  However, they completely ignore the language of the settlement agreement, which indicates that in section 2 that the bonus plan would continue "month to month" thereafter. *Exhibit C* ¶ 2.

As such, the partial motion to dismiss should be denied in this regard as well.

IV.   **Plaintiffs are Permitted to Plead Unjust Enrichment in the Alternative (Wage Action)**

"While a party generally may not simultaneously recover upon a breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories." *See Fantozzi v. Axsys Techs., Inc.*, No. 07–CV–2667, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008); *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F.Supp.2d 1, 4 (S.D.N.Y.2004).

Plaintiffs respectfully submit that it has plead the theory of unjust enrichment in the alternative.  Defendants claim that there was no reasonable expectancy of receiving compensation due to the alleged "discretionary" nature of the bonus.  However, as set forth more completely above, the bonus was earned and the mere fact that the chairman of the board would be deciding unresolved issues pursuant to section 4.2.4.2 does not mean he had absolute discretion, as ultimately the financials would govern the amounts owed.

As such, the partial motion to dismiss should be denied in this regard.

V.   **The Plaintiffs State a Claim for Breach of Contact (ATS Action)**

A contract can be formed under New York law without the execution of a written document, *see Mun. Consultants & Publishers v. Town of Ramapo,* 47 N.Y.2d 144, 148–49, 417 N.Y.S.2d 218, 390 N.E.2d 1143 (1979)

To determine whether a party entered into a contractual agreement, a court looks to "the objective manifestations of the intent of the parties as

gathered by their expressed words and deeds." *Flores v. Lower E. Side Serv.*

*Ctr., Inc.,* 4 N.Y.3d 363, 369, 795 N.Y.S.2d 491, 828 N.E.2d 593 (2005).

It is the responsibility of the court to interpret written instruments, while

other evidence about intent, "from which differing inferences may be drawn.

*Paxi, LLC v. Shiseido Americas Corp.* 636 F.Supp.2d 275 (SDNY 2019).

"The extent to which contracts may be deemed interdependent, of course,

depends upon the intent of the parties." *Nat'l Union Fire Ins. Co. of Pittsburgh*

*v. Clairmont*, 231 A.D.2d 239, 241 (1st Dep't 1997). "Whether the parties

intended to treat both agreements as mutually dependent contracts, the breach

of one undoing the obligations under the other, is a question of fact." *Rudman*

*v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13 (1972); *see Capital Bus. Credit LLC*

*v. Tailgate Clothing Co., Corp.*, 172 A.D.3d 655, 656 (1ˢᵗ Dept 2019) ("Whether

the parties intended to treat the licensing agreement, the manufacturing

agreement and the distribution agreement as mutually dependent contracts . . . is

a question of fact.")

In New York, the courts have required the parties to specify the

agreements and matters being merged or integrated into their

agreement. *See Hobart v. Schule*r, 55 N.Y.2d 1023, 1024 (1982); *LibertyPointe*

*Bank v. 75 E. 125th St., LLC*, 95 A.D.3d 706, 706 (1st Dept. 2012).  Without such

specificity, the courts have allowed parole evidence to be used to explain the

parties' intent, especially in cases involving claims of fraudulent

inducement. *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-21 (1959)

*Laduzinski v. Alvarez & Marsal Taxand LLC*, 132 A.D.3d 164, 169 (1st Dept.

2015) (holding that merger clause was mere boilerplate and "too general to bar plaintiff's claim").

In this case, not only have Plaintiffs properly plead the elements of a breach of contract claim, including the breach, but the intentions of the parties regarding the equity stake is corroborated by the facts.  More specifically, the surrender of the 30% stake in ATS BV, the signed operating agreement giving them the 30% stake, a bank account was formed, federal tax ID was obtained, Plaintiffs were named as CEO & COO, transfer of asset guidelines were established, and a transfer of immigration visas was facilitated, among other things.  *Exhibit A* ¶¶ 49, 56, 59, 60, 64, 65, 66.

Defendants attempt to refer to an integration clause in the Settlement Agreement does not preclude this claim, as set forth by the caselaw above.  The integration clause is boilerplate, does not specifically refer to the agreement regarding the equity stake, or anything about ATS US LLC at all.  The integration clause itself references a qualifier, "with respect to the subject matter hereof", which was clearly a dispute over the 2018 Bonus.  *Exhibit A* ¶¶ 49, 59, 60, 64, 65, 66; Exhibit C ¶¶ Second Whereas and 14

Not only does the conduct of the parties run contrary to Defendant's position, but all of this took place after the signing of the Settlement Agreement, and to the extent Defendants claim it is somehow a release of claims, the breach occurred at the earliest in November 2020.

Concomitantly, Defendant's state in their preliminary statement that the Defendant CSC Holdings, LLC., should be dismissed from this action.  However, this is not appropriate.  It is not disputed that, at least, Defendant CSC Holdings,

LLC signed the operating agreement for ATS US, LLC, which is integral to the claims in this matter.   *Exhibit A* ¶ 60.   Plaintiffs submit that any dismissal of Defendant CSC Holdings, LLC. is at best premature.

### VI.        The Plaintiffs State a Claim for Fraud (ATS Action)

Defendants claim that Plaintiff fail to meet the Rule 9(b) standard. Contrary to Defendants contentions, the Plaintiffs do plead the fraudulent statement, the speakers, and where the statements were made.   *Exhibit A* ¶ 135, 136, 137.

Plaintiffs have also plead the requisite intent,

> *"The above statement and representation that they would receive a thirty (30%) percent interest in the future restructuring was made with knowledge of its falsity at the time, and to induce Plaintiffs to build and grow their branch business, and continue working for Defendants, until they no longer needed them, replaced them, and then would attempt to fraudulently deprive them of their shares in the business or the value of said shares."   Exhibit A ¶ 136.*

As stated above, "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006); accord *Walia v. Veritas Healthcare Sols., L.L.C.*, No. 13 Civ. 6935, 2015 WL 4743542, at *6 (S.D.N.Y. Aug. 11, 2015).

In this case, the motive and opportunity to commit fraud should be clear from the large amounts at stake in the ATS Action.

As such, the partial motion to dismiss should be denied in this regard.


VII.   **The Plaintiffs State a Claim for Promissory Estoppel (ATS Action)**

Under New York law, a claim for detrimental reliance is analyzed as a claim of promissory estoppel where the claim has its basis in an unenforceable oral agreement. *Thayer v. Dial Indus. Sales, Inc.*, 85 F.Supp.2d 263 (2000), citing *P.A. Bergner & Co. v. Martinez,* 823 F.Supp. 151, 160 (S.D.N.Y.1993).

Under promissory estoppel, reliance upon a promise becomes grounds for recovery. *P.A. Bergner & Co. v. Martinez,* 823 F.Supp. 151, 160 (S.D.N.Y.1993). To state a claim of promissory estoppel, plaintiff must show: "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reasons of his reliance." *See Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 72 (2d Cir.1989) (*quoting Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.,* 804 F.2d 787, 793 (2d Cir.1986); *Reprosystem, B.V. v. SCM Corp.,* 727 F.2d 257, 264 (2d Cir.1984).

A plaintiff may "plead contract and estoppel in the alternative, particularly where there is a question of whether the contract governs the subject matter at issue." *MBIA Ins. Corp. v. Royal Bank of Canada*, 28 Misc.3d 1225 (A) (Sup. Ct. Westchester Co. 2010).

In this case, Plaintiffs have properly pled the elements of

promissory estoppel, *Exhibit A ¶¶ 118-123.*

VIII. **Plaintiffs are Permitted to Plead Unjust Enrichment in the Alternative (ATS Action)**

As stated above, "While a party generally may not simultaneously recover

upon a breach of contract and unjust enrichment claim arising from the same

facts, it is still permissible to plead such claims as alternative

theories." *See Fantozzi v. Axsys Techs., Inc.*, No. 07–CV–2667, 2008 WL

4866054, at *7 (S.D.N.Y. Nov. 6, 2008); *Bazak Int'l Corp. v. Tarrant Apparel

Grp.*, 347 F.Supp.2d 1, 4 (S.D.N.Y.2004).

Moreover, Plaintiffs have properly pled an unjust enrichment claim.

Plaintiffs conferred benefits to Defendants in the form of delivering their

combined thirty (30%) percent stake in ATS BV, worth approximately $20 million

for a token Thirty Thousand (30,000.00) Euro each, which the court should not in

good conscience permit Plaintiffs to retain.

The question as to whether "it is against equity and good conscience to

permit [defendant] to retain what is sought to be recovered", is "ill suited to

summary disposition", much less a motion to dismiss.  *Simon v. FrancInvest, S.

A.*, 192 A.D.2d 565 (1st Dept. 2021).

As such, the partial motion to dismiss should be denied in this regard.

IX.     **Leave to Amend Pleadings Freely Granted**

In the unlikely event this court finds the pleadings insufficient, Plaintiffs hereby requests leave to amend.  Plaintiffs acknowledge that the order of the court has limited leave to amend, to the extent issue were raised by the first motion to dismiss, later mooted.

Under Fed.R.Civ.P. 15(a), leave to amend a complaint shall be freely given in the absence of circumstances such as undue delay, bad faith or dilatory motive, undue prejudice to the opposing party or futility of amendment. *See Foman v. Davis,* 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs respectfully requests that the Partial Motion to Dismiss be denied.

Respectfully Submitted,

*/s/ David C. Van Leeuwen*
David C. Van Leeuwen, Esq. (DV 2007)
Francois Peyrot, Esq.
PEYROT & ASSOCIATES, PC
62 William Street, 8th Floor
New York, New York 10005
(646) 650-2785
David.vanleeuwen@peyrotlaw.com

*Attorneys for Plaintiffs*

Dated: May 7, 2021
New York, New York